IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

LUIS MIGUEL SIERRA-AYALA,

    Defendant.

CRIM. NO. 17-063 (PAD)

**OPINION AND ORDER**

Delgado-Hernández, District Judge.

This Opinion and Order supplements the one entered on August 2, 2019 (hereinafter "OP") which adopted the Magistrate Judge's recommendation (Docket No. 83) to the effect that defendant lacks standing to challenge the seizure of a bag he had in his possession the day of his arrest (Docket No. 105).[1] After the arresting officer (Sergeant Jesús López of the Puerto Rico Police Department) saw packages that from experience he knew were used to pack heroin inside the bag, he arrested the defendant and frisked him, finding a gun.

The defendant asks that the gun be suppressed (Docket No. 107, pp. 3-4). He may challenge the seizure of the gun. But the challenge fails, hence the request to suppress must be denied, because the defendant had not been seized when the officer saw the packages inside the

---

[1] The court uses the term "standing" as a shorthand method of referring to the issue of whether the defendant's own Fourth Amendment interests were implicated by the challenged governmental action. Technically, though, the concept of standing has not had a place in Fourth Amendment jurisprudence since the Supreme Court in Rakas v. Illinois, 439 U.S. 128 (1978), indicated that matters of standing in the context of searches and seizures actually involve substantive Fourth Amendment law. See, United States v. Kimball, 25 F.3d 1, 5 n.1 (1st Cir. 1994)(using the term "standing" in the same way, with the same technical clarification).

bag. That observation led to the defendant's arrest and a search incident to a lawful arrest, which uncovered the gun.[2]

## I.     BACKGROUND

Following the ruling at Docket No. 105, the court scheduled a conference for August 8, 2019 (Docket No. 106). On August 5, 2019, defendant asked that the conference be advanced, adding that even though standing was not recognized with respect to the bag, the OP did not address the suppression of the gun (Docket No. 107, p. 1). The court granted the request to advance the conference, holding it on August 6, 2019 (Docket Nos. 108, 110).

During the conference, defendant stated that a decision from the court was needed on whether defendant's seizure was illegal or not (Transcript of Conference, p. 7).[3] After hearing arguments on the issue, the court noted that it was crediting the testimony of the arresting officer, who among other things, said that he approached the defendant, identified himself as a police officer, and the defendant showed him the open bag with the drugs. Id. at 8.[4] The defendant

---

[2] The factual background is described in the Magistrate Judge's Report and Recommendation (Docket No. 83) and in the OP (Docket No. 105). Basically, the defendant was with a group of individuals who ran away when police officers arrived in the area. The defendant, however, stayed in place. One of the officers (Sergeant López) approached the defendant, identifying himself as a police officer. The defendant held open and showed the contents of the bag to the officer, who saw a clear plastic bag that had purple packages in it, which the officer knew was the type of packaging used for heroin. The officer placed the defendant under arrest and frisked him, finding the gun. The packages field tested positive for heroin and crack cocaine.

[3] District Judges have Court Reporters as part of their staff when presiding over the different proceedings held before them. Among other responsibilities listed in 28 U.S.C. § 753, reporters are responsible for promptly transcribing, when requested, the original record of all proceedings held before the judge and prepare and file a certified transcript of them. The transcript is available, following applicable rules and regulations, to parties who have arranged payment. And it is also available at the request of a judge, at no charge to the court. District Judges have access to the rough drafts of the transcripts before a formal request is made by any interested party, or the transcript is filed for the record in the court.

[4] Defendant's version is that the officer ordered him to give him the bag. In the OP, the court did not make a credibility finding on this matter, assuming instead that the facts occurred as defendant described them. Such description had no bearing on the issue of whether defendant had a legitimate expectation of privacy in the bag.

contends that the officer could not have approached him without meeting the standards for a Terry stop or probable cause, and that those standards are not satisfied here. Id.[5] The court rejected the argument, observing that law enforcement officers are entitled to approach people. Id. Following are the grounds in support of the court's ruling.

## II. DISCUSSION

### A. Standing to Challenge Initial Interaction between Officer and Defendant

The Fourth Amendment protects the "right of the people to be secure in their persons … and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Defendant alleges that he was seized in violation of the Fourth Amendment (Docket No. 38, p. 3; Docket No. 79, pp. 19-27; Docket No. 107, p. 3). The assertion that a particular person has been unlawfully seized entitles that person to challenge the government's action. See, Kimball, 25 F.3d at 9 (noting that standing to challenge a search presents issues separate and distinct to challenge a stop in rejecting government's argument that defendant lacked standing to challenge the constitutionality of the stop of codefendant's vehicle, but concluding that defendant did not have standing to question the constitutionality of the inventory search of the vehicle). Thus, even though, as ruled in the OP, defendant cannot challenge the seizure of the bag, he has standing to challenge the initial interaction between him and the officer that ultimately led to the seizure of the gun he has asked the court to suppress.

---

[5] The term "Terry stop" refers to a modality of seizure involving a temporary investigatory detention falling short of arrest. See, Terry v. Ohio, 392 U.S. 1, 19 (1968)(explaining concept). Such a detention does not offend the Fourth Amendment as long as it is justified at its inception and reasonable in scope, accounting for the "emerging tableau" of information known to the detaining officer. United States v. Arthur, 764 F.3d 92, 97 (1st Cir. 2014). To be justified at its inception, it must be accompanied by a reasonable, articulable suspicion of an individual's involvement in some criminal activity. Id. The reasonable suspicion standard is a protean one; it defies strict boundaries, requiring more than a visceral hunch about the presence of illegal activity but less than probable cause. Id.

    B.    Legality of Initial Interaction

Not all encounters between law enforcement officers and citizens are seizures for purposes of the Fourth Amendment. See, United States v. Young, 105 F.3d 1, 5-6 (1st Cir. 1997) (acknowledging principle); United States v. Mask, 330 F.3d 330, 336 (5th Cir. 2003) (same). As the Supreme Court discussed in Florida v. Royer, 460 U.S. 491 (1983), there are three basic categories or levels of police-citizen encounters: (1) an encounter which does not reach the level of a seizure within the meaning of the Fourth Amendment so that the prosecution need offer no justification for the encounter at all in order to satisfy the Fourth Amendment; (2) a Terry stop requiring reasonable suspicion; and (3) an arrest requiring probable cause. Id. at 497-499 (plurality opinion). See also, Young, 105 F.3d at 5-6 (describing three-tier interaction model); United States v. Willis, 759 F.2d 1486, 1495 (11th Cir. 1985)(analyzing identical three-level framework); United States v. Puglisi, 723 F.2d 779, 783 (8th Cir. 1984)(similar).[6]

A person is seized by the police when the officer, by means of physical force or show of authority, terminates or restrains his freedom of movement. See, Brendlin v. California, 551 U.S. 249, 254 (2007)(discussing topic). To determine whether an officer has restricted an individual's freedom of movement, courts ask "whether a reasonable person would feel free to decline the officer's request or otherwise terminate the encounter." United States v. Camacho, 661 F.3d 718, 725 (1st Cir. 2011)(quoting Brendlin, 551 U.S. at 255)(internal quotations omitted).

An officer restrains the liberty of someone through a show of authority "only when in view of all circumstances, a reasonable person would have believed that he was not free to leave."

---

[6] An initial encounter between an officer and a citizen may ripen into a seizure, triggering the Fourth Amendment and requiring officers to be able to articulate reasonable suspicion for a Terry stop or probable cause for an arrest. See, United States v. Álvarez-Sánchez, 774 F.2d 1036, 1040 (11th Cir. 1985)(examining and applying proposition); Mask, 330 F.3d at 336 (same).

United States v. Fields, 823 F.3d 20, 25 (1st Cir. 2016)(quoting United States v. Mendenhall, 446 U.S. 544, 553-554 (1980)). Characteristics of an encounter with law enforcement that might indicate there was a show of authority include the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled. Id.

This said, law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable searches and seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen. See, United States v. Drayton, 536 U.S. 194, 201 (2002)(articulating formulation). Even when law enforcement officers have no basis for suspecting a particular individual, they may pose questions, ask for identification, and request consent to search luggage, provided they do not induce cooperation by coercive means. Id.[7]

By this account, the defendant was not seized when the officer first approached him. Crediting the officer's testimony, the officer said nothing other than he was a police officer. An encounter between a citizen and police does not turn into a seizure simply because the officer identifies himself as an officer. See, Royer, 460 U.S. at 497 (stating proposition); United States v. Hayden, 759 F.3d 842, 847 (8th Cir. 2014) ("[The officers] clearly identified themselves as police, and approached the men. The officers did not block the ability of Hayden and Crockett to cross

---

[7] Treatise writers share this judicial view. See, Thomas K. Clancy, The Fourth Amendment: Its History and Interpretation (3d Ed. 2017), Carolina Academic Press, Durham, N.C., p. 253 (noting that the mere approaching of a citizen by a law enforcement officer and posing questions to the person is not a seizure); 4 Wayne R. La Fave, Search and Seizure, A Treatise on the Fourth Amendment (5th Ed. 2012), § 94(a), pp. 574-577 (pointing out that if an officer merely walks up to a person standing or sitting in a public place and puts a question to him, this alone does not constitute a seizure).

the street, did not touch the men, and did not display weapons. Merely identifying oneself as "Police" does not effect a seizure of a citizen who stops to listen or talk, because self-authentication is not a command in the nature of 'Police, halt' or 'Stop, in the name of the law!'"); United States v. Maragh, 894 F.2d 415, 418 (D.C.Cir. 1990)("… Maragh was aware of one plainclothes police officer, who approached him in mid-afternoon, in a public place, displayed no weapons, and did not block his path).

In like manner, the officer here never drew his gun or told the defendant not to move or to do anything. There was no evidence that the officer touched the defendant or blocked him in any way. The officer was the only one near the defendant at the time. Moreover, the encounter took place on a public location, a street, in daylight. See, Young, 105 F.3d at 5-6 (finding only a minimally intrusive interaction that did not trigger the protections of the Fourth Amendment when the police officers had pulled alongside the appellant, identified themselves as police officers, and asked "Got a minute?", to which the appellant replied, "Sure"); United States v. Williams, 413 F.3d 347, 349, 352 (3rd Cir. 2005)("We conclude that there was no seizure because there was no use of physical force, nor was there any show of authority when the police [4 officers] approached the van [inside of which the defendant was seated] in their marked cruiser, exited the vehicle and approached the parked van on foot"). And as that Court further recognized, "the police could approach the parked van without any reasonable suspicion, just as they could approach an individual standing on the street without any reasonable suspicion. Merely approaching an individual, standing or in an automobile, does not constitute a seizure under the Fourth Amendment." Id. at 354.

The "free to leave" test focuses on whether the conduct of police officers objectively communicates that law enforcement is exercising its official authority to restrain the individual's

liberty of movement. See, Fields, 823 F.3d at 25 (addressing issue). In other words, the standard is objective. It is concerned "not with the citizen's subjective perception or the officer's subjective intent." Mask, 330 F.3d at 336 (internal quotations omitted). Considering the totality of factual circumstances, the court reaches the same conclusion that the Magistrate Judge reached: the defendant was not seized when the officer first approached him and identified himself as a police officer.[8] By extension, the defendant had not been seized when he showed the officer the content of the open bag.

    C. Search Incident to a Lawful Arrest

When the officer observed the content of the bag, he recognized the type of packaging used for heroin. At that point, he had probable cause to arrest the defendant, and did so. Warrantless arrests do not violate the Fourth Amendment when conducted "in a public place upon probable cause." United States v. Santana, 427 U.S. 38, 42 (1976). The subsequent frisk was a search incident to a valid arrest. If an arrest is lawful, the arresting officers "are entitled to search the individual apprehended pursuant to that arrest." United States v. Uricoechea-Casallas, 946 F.2d 162, 165 (1st Cir. 1991).

The justification or reason for the authority to search incident to a lawful arrest "rests quite as much on the need to disarm the suspect in order to take him into custody as it does on the need to preserve evidence on his person for later use at trial." United States v. Robinson, 414 U.S. 218, 234 (1973). In this way, in case of a lawful custodial arrest, "a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under than Amendment." Id.

---

[8] The court is in agreement with the Magistrate Judge's factual analysis and legal conclusions.

### III.    CONCLUSION

For the reasons stated, the defendant's request to suppress the gun is DENIED. There was nothing objectively coercive about the initial encounter between the defendant and the officer. The officer did not draw his gun, block the defendant's path, touch the defendant, or command him to do or refrain from doing anything. The encounter occurred on a public location, in daylight. Nothing constitutionally prevented the officer from approaching the defendant in the first place.

After the officer saw the content of the bag, he had probable cause to arrest and to search the defendant as an incident to a lawful arrest. And because the defendant's arrest did not violate the Fourth Amendment, the search of his person was constitutionally permissible. The evidence obtained from the search was therefore not, as the defendant contends, the fruit of an illegal arrest or search, and should not be suppressed.

**SO ORDERED.**

In San Juan, Puerto Rico, this 14th day of September, 2019.

                                                        s/Pedro A. Delgado Hernández
                                                       PEDRO A. DELGADO HERNÁNDEZ
                                                       United States District Judge